UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO.: ) ) |
| CSX INTERMODAL, INC., KEVIN R. BROWN, and SUSAN BROWN, | ) ) ) 1:07 -cv- 1430 -RLY -WTL |
| Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Westfield Insurance Company ("Westfield"), by counsel, for its cause of action against the Defendants, CSX Intermodal, Inc. ("CSXI"), Kevin R. Brown ("Kevin") and Susan Brown ("Susan"), alleges the following:

### I. PARTIES & JURISDICTION

**1.1**   Plaintiff, Westfield, is an Ohio insurance company with its principal place of business in Westfield Center, Ohio. At all times material hereto, Westfield was duly authorized to transact the business of insurance within the State of Indiana.

**1.2**   Defendant, CSXI, is a Delaware corporation with its principal place of business in Jacksonville, Florida. At all times materials hereto, CSXI was duly registered with the Indiana Secretary of State to transact business within the State of Indiana, and was actively transacting business within the State of Indiana. Additionally, CSXI voluntarily submitted to the jurisdiction of this Court by virtue of its "Notice of Removal" filed in the following proceeding: *"Kevin R. Brown and Susan Brown,*

*Plaintiffs, vs. CSX Intermodal, Inc., Defendant*", Case No. 1:07-cv-0478, United States District Court for the Southern District of Indiana, Indianapolis Division.

**1.3**  Defendants, Kevin and Susan (the "Browns") are husband and wife, and citizens of the State of Indiana who reside in Avon, Hendricks County, Indiana.

**1.4**  Westfield delivered the insurance policy at issue to its named insured, Ace Cargo, LLC ("Ace Cargo") in Indianapolis, Marion County, Indiana.

**1.5**  The alleged conduct of CSXI which gives rise to this action occurred in Plainfield, Hendricks County, Indiana.

**1.6**  The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy Five Thousand Dollars ($75,000.00).

**1.7**  Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. §1332(a).

**1.8**  This Court has personal jurisdiction over CSXI and the Browns.

**1.9**  Venue lies in this Court pursuant to 28 U.S.C. §1391(a).

## II. FACTS

**2.1**  Westfield incorporates herein by reference the allegations contained within rhetorical Paragraphs 1.1 through 1.9 of this Complaint.

**2.2**  In the transportation industry, an intermodal shipment is one that uses several modes of transportation such as sea, rail, and road. The transfer of equipment from one mode of transportation to another is referred to as an interchange.

**2.3**  In order to promote uniformity within the shipping industry, a shipping industry trade group known as The Intermodal Association of North America ("IANA")

was formed. IANA, in turn, promulgated a "Uniform Intermodal Interchange and Facilities Access Agreement" (the "UIIA").

**2.4** Providers who are signatories to the UIIA, such as CSX, often prepare provider-specific addendums to supplement the UIIA.

**2.5** On or about March 24, 2003, Ace Cargo entered into an "Addendum to the Uniform Intermodal Interchange and Facilities Agreement" (the "Addendum") with CSX.

**2.6** A true and correct copy of the Addendum is attached hereto as Exhibit "1", and is incorporated herein by reference.

**2.7** The Addendum incorporated by reference the UIIA, including all amendments thereto.

**2.8** The "Participating Party Agreement" to the UIIA signed by Ace Cargo and CSX indicates that the signatories to the agreement (i.e., Ace Cargo and CXS) agreed to be "bound by the provisions of the UIIA, and subsequent amendments and/or revisions to that Agreement".

**2.9** On or about January 17, 2005, the IANA Intermodal Interchange Executive Committee (the "Committee") modified the "liability, indemnity, and insurance" provisions of the UIIA to read as follows:

    F.    Liability, Indemnity, and Insurance

\* \* \* \*

    4.    Indemnity:

        a.    Subject to the exceptions set forth in Subsection (b) below, Motor Carrier agrees to defend, hold harmless and fully indemnify the Indemnitees (without regard to whether the Indemnitees' liability

is vicarious, implied in law, or as a result of the fault or negligence of the Indemnitees) against any and all claims, suits, loss, damage or liability, for bodily injury, death and/or property damage, including reasonable attorney fees and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit, or in enforcing subsection F.4 (collectively, the "Damages") caused by or resulting from the Motor Carrier's: use or maintenance of the Equipment during an Interchange Period; and/or presence on the Facility Operator's premises.

    b.    Exceptions: The foregoing indemnity provision shall not apply to the extent Damages: (i) occur during the presence of the Motor Carrier on the Facility Operator's premises and are caused by or result from the negligent or intentional acts or omissions of the Indemnitees, their agents, employees, vendors or third party invitees (excluding Indemnitor); or (ii) are caused by or result from defects to the Equipment with respect to items other than those set forth in Exhibit A, unless such defects were caused by or resulted from the negligent or intentional acts or omissions of the Motor Carrier, its agents, employees, vendors, or subcontractors during the Interchange Period.

\* \* \* \*

6.    Insurance: To the extent permitted by law, Motor Carrier shall provide the following insurance coverages in fulfillment of its legal liability and obligations contained in this Agreement:

    a.    A commercial automobile insurance policy with a combined single limit of $1,000,000 or greater, insuring all Equipment involved in Interchange including vehicles of its agents or contractors; said insurance policy shall be primary to any and all other applicable insurance and shall name the Equipment Provider as additional insured. The extent of Equipment Provider's additional insured status is limited to the provisions of Subsection F.4 hereof.

      b.      A commercial general liability policy with a combined single limit of $1,000,000 per occurrence or greater, of which not portion can be self-insured.

      c.      Motor Carrier shall have in effect, and attached to its commercial automobile liability policy, a Truckers Uniform Intermodal Interchange Endorsement (UIIE-1) which includes the coverages specified in Section F.4. Motor Carrier shall use endorsement form UIIE-1 (or other corresponding forms which do not differ from UIIE-1) in the most current form available to the insurance carrier. Evidence of the endorsement of the policy and the coverage required by this provision shall be provided to IANA by the insurance company.

**2.10**    On or about January 17, 2005, the IANA also published its "Truckers Uniform Intermodal Interchange Endorsement (IANA FORM UIIE-1)" (the "IANA Endorsement").

**2.11**    A true and correct copy of the IANA Endorsement is attached hereto as Exhibit "2", and is incorporated herein by reference.

**2.12**    Shortly thereafter, an insurance industry trade group, Insurance Services Organization ("ISO") followed suit, and issued its "Truckers – Uniform Intermodal Interchange Endorsement Form UIIE-1", form No. CA 23 17 03 06 (the "ISO Endorsement").

**2.13**    A true and correct copy of the ISO Endorsement is attached hereto as Exhibit "3", and is incorporated herein by reference.

**2.14**    On January 27, 2005, Westfield issued its Commercial Package Policy No. _____ 8950 to Ace Cargo as the named insured, with effective dates of coverage of January 27, 2005, to January 27, 2006 (the "Policy").

**2.15** A true and correct copy of the Policy, with personal identifiers redacted, is attached hereto as Exhibit "4", and is incorporated herein by reference.

**2.16** On August 2, 2005, Ace Cargo employee, Kevin, arrived at the CSXI yard located at 2491 Dan Jones Road in Plainfield, Indiana, to pick up a chassis container. As Brown was connecting the chassis container to a semi-trailer, he alleges that he stepped into unstable rock (rip rap) which was covered with gravel in the parking lot and fell, suffering personal injuries (the "Accident").

**2.17** On February 12, 2007, Brown filed his "Complaint for Damages and Request for Jury Trial" (the "Complaint") against CSXI in the following legal proceeding: "*Kevin B. Brown and Susan Brown, Plaintiffs, vs. CSX Intermodal, Inc., Defendant*", Cause No. 32D03-0702-CT-3, Hendricks Superior Court No. 3 (the "Lawsuit").

**2.18** A true and correct copy of the Lawsuit's Complaint is attached hereto as Exhibit "5", and is incorporated herein by reference.

**2.19** The Lawsuit's Complaint proceeds against CSXI on a premises liability theory, and alleges:

> That the Defendant's failure to exercise reasonable care to make its premises reasonably safe for the Plaintiff's use, and the Defendant's failure to warn the Plaintiff of the hazardous condition, was the direct and proximate cause of serious personal injury to the Plaintiff.

**2.20** On April 17, 2007, CSXI removed the Lawsuit to the United States District Court for the Southern District of Indiana, Indianapolis, Division, where it was docketed and remains pending as Case No. 1:07-cv-0478-DFH-JMS.

**2.21** By e-mail and letter dated May 22, 2007, CSXI notified Westfield of the Lawsuit, and requested that Westfield defend and indemnify CSXI under the Policy against the Lawsuit.

**2.22** By correspondence dated October 5, 2007, CSXI provided Westfield with a copy of the Lawsuit's Complaint.

**2.23** By correspondence dated October 22, 2007, Westfield denied coverage for the Lawsuit, and declined to defend CSXI against the Lawsuit.

**2.24** An actual controversy exists between the parties hereto concerning whether Westfield has a duty under the Policy to defend CSXI against the Lawsuit:

- (a) CSXI contends that Westfield has a duty under the Policy to defend it against the Lawsuit;
- (b) Westfield contends that it does not have a duty under the Policy to defend CSXI against the Lawsuit; and
- (c) The Browns are joined in this action by virtue of their interest in the resolution of the duty to defend issue.

**2.25** An actual controversy exists between the parties hereto concerning whether Westfield has a duty under the Policy to indemnify CSXI against the Lawsuit:

- (a) CSXI contends that Westfield has a duty under the Policy to indemnify it against the Lawsuit;
- (b) Westfield contends that it does not have a duty under the Policy to indemnify CSXI against the Lawsuit; and
- (c) The Browns are joined in this action by virtue of their interest in the resolution of the duty to indemnify issue.

## III.   DEMAND FOR RELIEF

WHEREFORE, Westfield respectfully requests the following relief:

**3.1**   That the Court declare that Westfield has no duty under the Policy to defend CSXI against the Lawsuit;

**3.2**   That the Court declare that Westfield has no duty under the Policy to indemnify CSXI against the Lawsuit;

**3.3**   Costs; and

**3.4**   Such further relief as the Court deems just and proper.

SMITH FISHER MAAS & HOWARD, P.C.

*/s/ Mark R. Smith*

MARK R. SMITH, 2115-49

SMITH FISHER MAAS & HOWARD, P.C.
7209 North Shadeland Avenue
Indianapolis, Indiana  46250
Telephone:  (317) 578-1900
Facsimile:  (317) 578-1330
E-Mail:  msmith@smithfisher.com
Attorneys for Westfield Insurance Company

F:\WES-683\COMPLAINT for DJ WES-683.doc